UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KENNETH NORTON,**                                                        Chapter 7
    Debtor                                                                        Case No. 17-12913-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

    The matter before the Court is the Motion for Relief from the Automatic Stay filed 4 Millbrook Road, LLC ("Millbrook"). The issue presented by the Motion is whether Millbrook is entitled to file a civil action to seek, pursuant to Mass. Gen. Laws ch. 239, § 4(c), reimbursement of costs it incurred in engaging a licensed and bonded mover to remove and store personal property of Kenneth Norton (the "Debtor") following his eviction from real property located at 4 Millbrook Road, Nantucket Massachusetts (the "property") that Millbrook purchased at a valid foreclosure sale prior to the commencement of the Debtor's bankruptcy case. In addition to requesting authority to seek reimbursement, Millbrook seeks authority to obtain a personal property attachment and to subsequently levy on any execution it obtains against the personal property which is now held in storage a facility owned by Triple M Movers and Storage, Inc. ("Triple M") located at 1109 Montello Street, Brockton, Massachusetts. Resolution of the issue hinges on whether Millbrook's claim for reimbursement arose prior to the conversion of the

Debtor's Chapter 11 case to a case under Chapter 7 in conjunction with its commencement of a summary process action, in which case the claim would be dischargeable, or whether its claim arose post-conversion, in which case the claim would not be subject to discharge and Millbrook would be entitled to relief from the automatic stay. *See* 11 U.S.C. § 348(d).[1]

The Court heard the Motion and the Debtor's Objection on July 10, 2018 and directed the parties to file memoranda addressing the issue of when the claim for reimbursement arose. The material facts necessary to determine the issue are not in dispute and none of the parties in interest requested an evidentiary hearing. The Chapter 7 Trustee does not oppose the Motion.

## II. BACKGROUND

The Debtor filed a voluntary Chapter 11 petition on August 5, 2017.[2] Prior to that date, Millbrook had purchased the property at a foreclosure sale. On August 18, 2017, it filed a Motion for Relief from the Automatic Stay seeking, among other things, authority to obtain legal possession of the property by filing and prosecuting a summary process

---

[1] Section 348(d) of the Bankruptcy Code provides:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. § 348(d).

[2] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

complaint against the Debtor in the Nantucket District Court. On August 23, 2017, this Court overruled the Debtor's objection to the motion and granted Millbrook relief from the automatic stay to commence eviction proceedings against the Debtor as he was a tenant at sufferance. Less than three weeks later, on October 10, 2017, the Debtor filed a motion to convert his Chapter 11 case to a case under Chapter 7 which motion the Court granted on the same day.

Millbrook filed its summary process complaint on September 18, 2017. It obtained a judgment for possession on October 11, 2017, one day after the Debtor's case was converted to Chapter 7.[3] Approximately six months later, on April 19, 2018, the state court issued an execution with respect to the judgment for possession. An invoice from Triple M in the sum of $9,255.00 reflects that the contents of the Debtor's former home which he shared with his spouse were removed from the property on April 22, 24, and 25, 2018.

### III. POSITIONS OF THE PARTIES

A. Millbrook

Millbrook contends that, prior to the decision made by the Debtor and his spouse not to remove their personal belongings from the property, it had incurred no reimbursement costs and had no claim for such costs. Specifically, it contends that no claim, i.e., no "right to payment whether or not such right is reduced to judgment,

---

[3] The Debtor attached a copy of docket in the summary process action to his memorandum.

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured," existed until it incurred costs associated with Triple M's removal of the Debtor's personal property from his former home. *See* 11 U.S.C. § 101(5)(A).[4] It adds that no right to payment existed under Mass. Gen. Laws ch. 239, § 4(c) until it incurred moving costs. It rejects any suggestion that the moving costs it incurred were contingent when the summary process complaint was filed pointing to a decision from the Ninth Circuit in which the court stated "a contingent debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" Fostvedt v. Dow (In re Fostvedt), 823 F.2d 305, 306 (9th Cir. 1987). It maintains that its "right to reimbursement was not 'triggered' by an 'extrinsic event.' It was created by Norton's

---

[4] According to the court in In re City of Detroit, Michigan, 548 B.R. 748 (Bankr. E.D. Mich. 2016),

> "Congress intended by this language to adopt the broadest available definition of 'claim,'" Johnson v. Home State Bank, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (citations omitted), which includes "'all legal obligations of the debtor, no matter how remote or contingent.'" In re Huffy Corp., 424 B.R. 295, 301 (Bankr. S.D. Ohio 2010) (quoting Grady v. A.H. Robins Co., Inc., 839 F.2d 198, 200 (4th Cir. 1988)). This broad definition serves the two primary goals of bankruptcy: to ensure that all creditors are treated equitably and to secure a fresh start for the debtor. As the Huffy court put it, "a broad definition of claim allows a bankruptcy court to deal fairly and comprehensively with all creditors in the case and, without which, a debtor's ability to reorganize would be seriously threatened by the survival of lingering remote claims and potential litigation rooted in the debtor's prepetition conduct." 424 B.R. at 301.

In re City of Detroit, Michigan, 548 B.R. at 761.

conduct occurring on April 24, 2018—leaving his personal belongings in Millbrook's property."

Citing In re Parks, 281 B.R. 899 (Bankr. E.D. Mich. 2002), Millbrook acknowledges that three approaches have been formulated to determine when a claim arises: the "right to payment" test, the "debtor's conduct" test and a third approach pursuant to which courts examine "whether there was a prepetition relationship between the debtor and the creditor such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed." Id. at 902 (citations omitted). Millbrook argues that the claim for reimbursement did not arise until after conversion under any of these tests.

B. The Debtor

The Debtor argues that the moving and storage costs are directly related to the summary process action and thus constitute a pre-conversion claim. He states: "To put it another way, but for the summary process action, this 'claim' would not have arisen," adding that "[a]nything that results from the summary process action relates back to the filing of the summary process complaint, which indisputably was prior to conversion to chapter 7." The Debtor supports his argument with reference to Mass. Gen. Laws Ch. 239, § 4(c) ("The plaintiff in the summary process action shall pay the costs of removing the property to the place of storage. The plaintiff shall be entitled to reimbursement by the defendant for any costs and fees so advanced."). He adds that "Millbrook is asking this court to permit it to collect 'costs' of the summary process action from Norton,

5

notwithstanding that the summary process action and judgment all transpired before conversion to chapter 7."[5]

## IV. APPLICABLE LAW

The determination of when claims arise and whether certain creditors hold claims under 11 U.S.C. § 101(5) has generated considerable controversy in bankruptcy case law. Resolution of when a claim arises and determining whether it is affected by the discharge can be even more difficult when a case is converted from one chapter to another. According to the United States District Court for the District of Massachusetts,

> The general rule is that only debts that arose prior to the filing of the bankruptcy petition are eligible for discharge. *See* 11 U.S.C. § 727(b). Section 727 of the Code authorizes a discharge in a Chapter 7 bankruptcy case. Id. § 727(a). Subsection (b) of that section provides in relevant part that "a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter." Id. § 727(b). For purposes of this general rule, the filing date of the bankruptcy petition and the "date of the order for relief" are synonymous. Id. § 301 (providing that the "commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter"); In re Schlichtmann, 375 B.R. 41, 96 (Bankr. D. Mass. 2007). However, "the date of the entry of the order for relief changes when a case is converted from Chapter 13 to Chapter 7." In re Aboraia (Aboraia v. USDA Food & Nutrition Serv.), No. 04–04941–BGC–7, 2012 WL 385635, at *15 (Bankr. N.D. Ala. Feb. 6, 2012). . . . Section 348(b) provides: "Unless the court for cause orders otherwise, in section[ ] . . . 727(b) . . . of this title, 'the order for relief under this chapter' in a chapter to which a case has been converted under section . . . 1307 of this title means the conversion of such case to such chapter." Id. § 348(b). Accordingly, reading §§ 727(b) and 348(b) together, when a case is converted from a Chapter 13 [or a Chapter 11] case to a Chapter 7 case, "the date of the order for relief under this chapter" refers to the date of the conversion of the case to a Chapter 7 case for purposes of determining which debts arose before the date of the order for relief, and thus which debts are prepetition debts entitled to be discharged. Therefore, all debts

---

[5] The Debtor is incorrect. Judgment for possession entered in the summary process action on October 11, 2017, after the conversion of the case to Chapter 7.

6

> that arose before the conversion (except those listed in § 523) are treated as prepetition debts and thus are dischargeable. *See* In re Fickling (Fickling v. Flower), 361 F.3d 172, 174 (2d Cir. 2004) (holding in Chapter 11 to Chapter 7 conversion case that because claims for attorneys' fees and expenses were incurred after the filing of the Chapter 11 petition, but pre-conversion, and no exemption applies, such claims were dischargeable under § 727); In re Villanueva, No. 08–20646, 2009 WL 2928496, at * 3 (Bankr. D. Md. June 5, 2009) (explaining that pursuant to §§ 348(b) and 727(b), a Chapter 7 discharge "had the effect of discharging all of the Debtor's debts that arose before . . . the date of conversion of that case from Chapter 13 to Chapter 7").

Vil v. Poteau, No. 11-CV-11622-DJC, 2013 WL 3878741, at *7 (D. Mass. July 26, 2013). In view of the provisions of section 348 as explicated by the United States District Court, this Court must determine whether Millbrook's claim for reimbursement arose before October 10, 2017, the date the Debtor's Chapter 11 case was converted to a case under Chapter 7.

As Millbrook correctly observes, courts have fashioned three tests to determine whether parties hold prepetition claims: "the accrued state law claim test, the conduct test, and the prepetition relationship test." *See* Epstein v. Official Committee of Unsecured Creditors of Piper Aircraft Corp., 58 F.3d 1573, 1576 (11th Cir. 2005). The accrued state law claim test is predicated upon the following:

> [T]he notion that "while federal law controls which claims are cognizable under the Code, the threshold question of when a right to payment arises, absent overriding federal law, 'is to be determined by reference to state law.'" Avellino v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.), 744 F.2d 332, 337 (3d Cir. 1984) (quoting Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946)). Also known as the "right to payment" approach, courts following it have held that "a 'claim' does not arise in bankruptcy until a cause of action has accrued under non-bankruptcy law." Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1275 (5th Cir. 1994) (citing M. Frenville Co., 744 F.2d at 337). This approach has been rejected "as inconsistent with the broad statutory

7

> definition of a 'claim' and with 'the overriding goal of the Bankruptcy Code to provide a "fresh start" for the debtor.'" Cal. Dep't of Health Servs. v. Jensen (In re Jensen), 995 F.2d 925, 928 (9th Cir. 1993) (quoting Jensen v. Cal. Dep't of Health Servs. (In re Jensen), 127 B.R. 27, 31 (B.A.P. 9th Cir. 1991) (citations omitted)); [Roach v.] Edge [In re Edge)], 60 B.R. [690,] [ ] 696 [(Bankr.M.D.Tenn.1986)] ("The plain meaning of §§ [101(5)] and 502(b)(1) is that state law will not control the existence or allowance of a bankruptcy claim where under state law the right to payment depends only on one or more of the enumerated disabling characteristics [that the right is contingent, unmatured, etc.].").

Jeffries v. Buckley (In re Buckley), 404 B.R. 877, 887–88 (Bankr. S.D. Ohio 2009) (quoting In re Cleveland, 349 B.R. 522, 529 (Bankr. E.D. Tenn. 2006)). The accrued state law claim test theory has been discredited. *See* Jen-Wen, Inc. v. Gordon Van Brunt (In re Grossman's Inc.), 607 F.3d 114 (3d Cir. 2010) (overruling In re M. Frenville Co., 774 F.2d 332 (3d Cir. 1984), *cert. denied*, 487 U.S. 1260 (1988)).[6] Under the conduct test a right to payment arises when the conduct giving rise to the alleged liability occurs. *See* Watson v. Parker (In re Parker), 313 F.3d 1267, 1269 (10th Cir. 2002), *cert. denied,* 540 U.S. 965 (2003). The prepetition relationship test, also known as the fair contemplation test requires "'some prepetition relationship, such as contact, exposure, impact or privity, between the debtor's prepetition conduct and the claimant.'" *See* Epstein v. Official Committee of Unsecured Creditors of Piper Aircraft Corp., 58 F.3d at 1576 (citations omitted).

---

[6] The Third Circuit refrained from adopting either the conduct test or the prepetition relationship test. Instead, it adopted an approach "where a claimant be exposed to a debtor's product or conduct pre-petition. It requires individuals to recognize that, by being exposed to a debtor's product or conduct, they might hold claims even if no damage is then evident." In re Grossman's Inc., 607 F.3d at 125. *See also* Wright v. Owens Corning, 679 F.3d 101, 106 (3d Cir. 2012), *cert. denied*, 568 U.S. 1157 (2013).

The United States Court of Appeals for the First Circuit has not specifically adopted the conduct test or the prepetition relationship test, although it has rejected the accrued state law claim test. *See* Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 8 n.9 (1st Cir.1992) (collecting cases holding that Congress did not intend the Code's "'claim' criteria to turn on the peculiarities of state law, the timing of a lawsuit, or the claimant's failure to anticipate specific future contingencies").[7] In Vil v. Poteau, the court observed that "[m]ost courts have followed, although with slight variations, either the 'conduct test' or the 'pre-petition relationship test,' also known as a 'narrow

---

[7] The First Circuit specifically rejected the decision in In re M. Frenville Co., 744 F.2d 332 (3d Cir.1984), *cert. denied*, 469 U.S. 1160 (1985). It stated:

> First, more recent decisions consistently have declined to accept the Frenville reasoning and its failure to accord full breadth to the term "claim," *see, e.g.,* In re Yanks, 49 B.R. 56, 58 (Bankr. S.D. Fla.1985), and have taken particular exception to Frenville's focus on the maturation or accrual of an indemnification claim. *See, e.g.*, In re THC Financial Corp., 686 F.2d at 802–04 (no abuse of discretion in characterization of written indemnification agreement as contingent claim, despite postpetition breach); In re Black, 70 B.R. at 650–51 (indemnification counterclaim based on state procedural law creates "contingent claim" at bankruptcy, even though claimants had no way of anticipating triggering event). These courts have found no indication in the language or legislative history of Bankruptcy Code § 101(4) that Congress intended Code "claim" criteria to turn on the peculiarities of state law, the timing of a lawsuit, or the claimant's failure to anticipate specific future contingencies.
>
> Second, and more importantly for present purposes, Frenville explicitly noted that "[t]he present case is different from one involving an indemnity or surety contract. When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement." Frenville, 744 F.2d at 336 (emphasis added).

In re Hemingway Transport, Inc., 954 F.2d at 8, n.9.

conduct theory.'" 2013 WL 3878741, at *9 (citing In re Grossman's Inc. (Jeld–Wen, Inc. v. Van Brunt), 607 F.3d at 122). The court in Poteau added that the First Circuit "appears to endorse at least the view that a claim arises when the acts giving rise to the debtor's alleged liability occur." Id. (citing Rederford v. U.S. Airways, Inc., 589 F.3d 30, 37 (1st Cir.2009); In re Hemingway Transp., Inc., 954 F.2d at 8 n.9; and In re M.A.S. Realty Corp., 318 B.R. 234, 237 (Bankr. D. Mass. 2004)).

**V. DISCUSSION**

Determination of when Millbrook's claim arose involves an examination of the Debtor's conduct. On the one hand, was his conduct giving rise to the claim the act of holding over as a tenant at sufferance after the foreclosure sale while challenging the validity of that foreclosure sale in state court as well as in this Court? That conduct occurred prepetition and continued during the short course of his Chapter 11 case. On the other hand, was his conduct giving rise to the claim his refusal to vacate the property until such time as Triple M arrived to remove all his personal property? The Court concludes that the conduct giving rise to the Debtor's liability occurred post-conversion because the "act" giving rise to his liability was his failure to remove his personal property from the property after the judgment for possession issued. The Court further concludes that the claim arose as a contingent, unliquidated claim when Millbrook obtained its judgment for possession post-conversion. As Judge Kenner observed in In re CD Realty Partners, 205 B.R. 651 (Bankr. D. Mass. 1997),

> [A] contingent right to payment is, by definition, a right to payment that, because it is contingent, is not yet and may never be a right to payment. In the strangely appropriate language of philosopher Martin Heidegger, it

10

Case 17-12913    Doc 151    Filed 08/17/18    Entered 08/17/18 12:39:56    Desc Main
Document      Page 11 of 14

might be said to exist somewhere on a continuum between being and nonbeing. At some point on that continuum, a right to payment becomes so contingent that it cannot fairly be deemed a right to payment at all.

Id. at 656. This observation is compelling in the context of a tenant at sufferance and a summary process proceeding. Each of those circumstances may be said to potentially involve a claim for reimbursement for the costs of removing personal property but until there is a judgment for possession a claim for reimbursement is exceedingly remote.

As noted above, upon the entry of the post-conversion judgment for possession, a contingent, unliquidated claim arose in Millbrook's favor. Certainly many tenants faced with eviction would take all possible steps to retain control over their personal property and remove that personal property from the residential real property, particularly if they had resources to remove and store their personal property themselves.[8] The claim for reimbursement then depended upon the Debtor's conduct in failing to remove his personal property from the Millbrook Road property which occurred post-conversion.

Sections 3 and 4 of Chapter 239 of Massachusetts General Laws governing summary process eviction proceedings provide guidance for determining the issue. Section 3 provides in pertinent part:

> Except as hereinafter provided, if the court finds that the plaintiff is entitled to possession, he shall have judgment and execution for possession and costs, and, if rent is claimed as provided in section two and found due, the judgment and execution shall include the amount of the award. If the

---

[8] In this regard, the Court notes that Debtor's counsel represented that he was paying storage charges owed to Triple M. The Court also notes that the Debtor, who is a building contractor, claimed exemptions in a Ford F350 Super Cab truck and $48,546.67 in an annuity fund.

11

plaintiff becomes nonsuit or fails to prove his right to possession, the defendant shall have judgment and execution for costs.

*At least forty-eight hours prior to serving or levying upon an execution issued on a judgment for the plaintiff for possession of land or tenements rented or leased for dwelling purposes, the officer serving or levying upon the execution shall give the defendant written notice that at a specified date and time he will serve or levy upon the execution and that at that time he will physically remove the defendant and his personal possessions from the premises if the defendant has not prior to that time vacated the premises voluntarily.*

Mass. Gen. Laws Ann. ch. 239, § 3 (emphasis supplied). Section 4 provides in pertinent part:

(a) *If an officer, serving an execution issued on a judgment for the plaintiff for possession of land or tenements, removes personal property*, belonging to a person other than the plaintiff, from the land or tenements, he shall forthwith cause it to be stored for the benefit of the owners thereof. Such property shall be stored with the licensed public warehouser identified in the notice provided to the defendant pursuant to section 3, except that the officer shall store the property with a warehouser or other storage facility of the defendant's choosing if the defendant notifies the officer of his choice in writing at or before the time of removal of the property. The officer shall file with the court that issued the summary process judgment and provide to the defendant in hand, or if the defendant is not present at the time of execution by receipted mail to the defendant's last and best known address, a receipt containing a description of the goods removed or of the packages containing them, as well as name and signature of the officer. For the purposes of this section, the term "warehouser or other storage facility" shall mean a public warehouse licensed and bonded pursuant to section 1 of chapter 105, located in the commonwealth and within a 20 mile radius of the land or tenements from which the personal property is removed.

\*\*\*

(c) The plaintiff in the summary process action shall pay the costs of removing the property to the place of storage. The plaintiff shall be entitled to reimbursement by the defendant for any costs and fees so advanced.

Mass. Gen. Laws Ann. ch. 239, § 4(a) and (c) (emphasis supplied).

This Court interprets the statutory language as contemplating removal of personal property by the tenant in the first instance. The statutes contains no provisions that suggest that a tenant subject to a summary process proceeding would be precluded from making arrangements to remove his or her personal property following a judgment for possession and the issuance of an execution. Indeed, the evicted tenant must be provided with written notice of the date and time of service or levy upon the execution. That notice is designed to enable the tenant to remove his or her personal property from the real property. Thus, section 4(a) begins with the phrase, "If an officer, serving an execution issued on a judgment for the plaintiff for possession of land or tenements, removes personal property. . . ." Stated another way, obtaining a judgment for possession is not coincident with entitlement to reimbursement for the costs of removing personal property to a place of storage. Accordingly, under the conduct test, Millbrook's claim did not arise on the commencement of the summary process proceeding. The claim arose as a contingent claim when Millbrook obtained its judgment for possession and ripened when it incurred costs associated with the removal and storage of the Debtor's personal property when he failed to remove his personal property from property after October 11, 2017.

In view of the undisputed facts that the judgment for possession issued on October 11, 2017 after the conversion of the Debtor's case to a case under Chapter 7 and that the execution issued approximately six months later on April 19, 2018, the Court also concludes that under the fair contemplation test, Millbrook's claim for the costs of removal and storage were not within its fair contemplation at the time the petition was

13

filed or during the Chapter 11 case when it commenced the summary process action. The prepetition relationship between the Debtor and Millbrook arising out Millbrook's status as a purchaser of the property at a foreclosure sale and its subsequent commencement of a summary process action did not give rise to a prepetition contingent, unliquidated, or unmatured claim for the costs of removing personal property to a place of storage within the fair contemplation of Millbrook. Accordingly, under either the conduct test or the fair contemplation test, the claim for reimbursement arose post-conversion and is not affected by or subject to the entry of discharge in this case.[9]

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Motion for Relief from the Automatic Stay for purposes of obtaining reimbursement from the Debtor's non-exempt personal property held in storage.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 17, 2018

---

[9] The Chapter 7 Trustee has obtained several extensions of time within which to object to the Debtor's discharge. The present deadline is September 4, 2018.