## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KENNETH NORTON,**                                       Chapter 7
     Debtor                                                     Case No. 17-12913-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matter before the Court is the Motion for Reconsideration of Order Sustaining Trustee's Objection to Homestead Exemption filed by Kenneth Norton (the "Debtor"). The Court, at a hearing conducted on September 7, 2018, sustained the Trustee's Objection to Homestead Exemption, stating the following on the record:

> Exemptions are determined as of the petition date. The debtor is judicially estopped from claiming that this Vermont property was exempt as his homestead as of the petition date. Because in numerous and various pleadings filed in this case, including schedules, statements, omissions in schedules and statements, during the litigation over relief from stay to evict him from Nantucket he expressly and unequivocally stated that Nantucket was his home as of the petition date and thereafter.
>
> . . . Massachusetts law is clear that the exemption must be a home and the vacant land in Vermont is not his home. [The Debtor] said Nantucket was his home. He is judicially estopped.
>
> So for all of the reasons the trustee stated, the debtor is not entitled to a Massachusetts homestead in vacant land in Vermont, which he did not occupy as his principal residence as of the date of the filing of the petition.

1

>He did not intend to occupy that property as his principal residence. He said otherwise numerous and various times. He cannot have more than one principal residence.

Through his Motion, the Debtor specifically seeks reconsideration of the order sustaining the Chapter 7 Trustee's objection to his claim of a homestead exemption in 37.6 acres of undeveloped land located on Marsh Hill Road, Andover, Vermont (the "Vermont Land"). The order was a predicate of the Trustee's motion to sell that property, which motion the Court also granted on September 7, 2018. The Debtor, citing Ruiz Rivera v. Pfizer Pharmaceuticals, LLC, 521 F.3d 76, 81- 82 (1st Cir. 2008) ("A court appropriately may grant a motion for reconsideration 'where the movant shows a manifest error of law or newly discovered evidence'"), and In re Wedgestone Financial, 152 B.R. 786 (Bankr. D. Mass. 1993) (same), argues that "the order resulted from an error of law." Because the Debtor does not argue that this Court erred in its factual findings or that he possesses newly discovered evidence and because the Debtor did not request an evidentiary hearing, the Court shall accept the Trustee's factual representations set forth in his Objection to Homestead Exemption for the purpose of determining the Motion for Reconsideration.[1]

---

[1] Moreover, the Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

## II. UNCONTESTED FACTS

In 2002, Kenneth Norton (the "Debtor") and his wife, Jeanne B. Norton, purchased the Vermont Land. The Vermont Land is assessed by the Town of Andover as "non residential" land with a value of $93,600.00.

On August 5, 2017, the Debtor commenced a Chapter 11 bankruptcy case. At that time, the Debtor and his wife resided at 4 Millbrook Road, Nantucket, Massachusetts (the "Nantucket Home"), using it as their primary residence. Prior to August 5, 2017, the Nantucket Home had been sold to 4 Millbrook Road, LLC ("Millbrook") following a foreclosure sale, but the Debtor refused to vacate the property, challenging the validity of the sale.

On September 4, 2017, the Debtor filed his schedules of assets and liabilities. On Schedule A/B: Property, he listed his ownership interest in the Nantucket Home as "tenant at suffereance [sic] subject to wrongful foreclosure recovery [sic]." He did not disclose any interest in the Vermont Land as an asset of his bankruptcy estate.

On October 10, 2017, the Court granted the Debtor's motion to convert his Chapter 11 case to a case under Chapter 7. Warren E. Agin was duly appointed as the Chapter 7 trustee of the Debtor's estate, and continues to serve as trustee.

On November 4, 2017, the Debtor filed amended Schedules A/B and C, erroneously listing the address of the Vermont Land on Schedule A/B as 4 Millbrook Road, Nantucket, Massachusetts. On Schedule C, he claimed an exemption in "Primary residence (mortgage foreclosed pre-petition; buyer is collecting rent from tenan)) [sic]" pursuant to 11 U.S.C. § 522(d)(1) and in the Vermont Land pursuant to 11 U.S.C. §

3

522(d)(5). During the bankruptcy case, the Debtor and his wife continued to reside in the Nantucket Home until they were forced to vacate through court processes in April 2018. From August 5, 2017, through the present date, the Debtor has aggressively acted to recover ownership of the Nantucket Home on the ground that the real estate is his home.[2]

---

[2] In his Objection, the Chapter 7 Trustee, referencing numerous exhibits, pointed to the following evidence: 1) the Debtor contested a motion for relief from stay filed by Millbrook in which it sought to continue eviction proceedings, describing the Nantucket Home as his "home" and setting forth arguments premised on his intent to live there; 2) the Debtor filed an adversary proceeding against Millbrook and others (Adv. P. No. 17-1106), through which he sought to undo the prior foreclosure based, in part, on claims that the lender had failed to comply with loss mitigation programs applicable to foreclosures of personal residences, noting that he and his wife reside at 4 Millbrook Road, Nantucket, Massachusetts and that "[h]e lives at the property with his wife;" 3) the Debtor filed a motion for a preliminary injunction on August 24, 2017 in the adversary proceeding, describing the Nantucket Home as his home and arguing that denial of the injunction would "result, eventually, in Norton and his wife having to move, with the attendant expense, disarray and loss of time from Norton's employment as a general contractor;" 4) the Debtor continued to contest the eviction process, including multiple attempts to appeal or otherwise overturn an execution for possession, after the motion for relief from stay was granted and the motion for preliminary injunction denied; 5) the Debtor together with his spouse filed in state court, on April 24, 2018, an "Emergency Motion to Enjoin Eviction and Permit Appeals to Proceed," arguing that they would be irreparably harmed by the "loss of a family home and residence;" 6) the Debtor and his wife failed to comply with an execution for possession issued on April 19, 2018 and the County Sheriff had to remove their possessions from the Nantucket Home; 7) the Debtor and his wife filed, on May 3, 2018, a motion to restore possession in the state court, which the state court denied on June 8, 2018; 8) the Debtor and his wife, on March 1, 2018, also filed a complaint in the Middlesex Superior Court against Santander Bank, N.A., and Millbrook, claiming that the foreclosure was void and seeking repossession of title to the Nantucket Home; 9) the Debtor and his wife in their amended state court complaint, filed May 14, 2018 (after they were evicted), averred that they "own the property located at 4 Millbrook Road, Nantucket … and use it as their primary residence;" 10) the Superior Court action, which the Debtor commenced to regain possession of the Nantucket Home, remains pending; and 11) on July 6, 2018, the Debtor signed and filed with this Court an "Affirmation in Support of Objection to Motion of 4 Millbrook Road, LLC for Relief from Stay in which described the Nantucket Home as his "home."

4

On July 6, 2018, the Debtor filed a Motion for Leave to Amend Schedule of Exemptions together with an amended Schedule C, stating "given the change in circumstances since the commencement of the case, including relief from stay being granted with respect to his home on Nantucket Island and conversion of the case to chapter 7, he believes that this amendment more appropriately protects his property interests." The Debtor, citing Law v. Siegel, 571 U.S. 415, 427-28 (2014) ("whatever other sanctions a bankruptcy court may impose on a dishonest debtor, it may not contravene express provisions of the Bankruptcy Code by ordering that the debtor's exempt property be used to pay debts and expenses for which that property is not liable under the Code."), and In re Hoover, 574 BR 413, 421 (Bankr. D. Mass. 2017) (holding that court lacked authority to deny a debtor's motion to amend his asset and exemption schedules based on debtor's alleged bad faith in fraudulently undervaluing cause of action at the commencement of his case), added: "Amendment of exemptions cannot be denied for any reason not stated in the bankruptcy code or other applicable law." On amended Schedule C, the Debtor has claimed up to $125,000 in value in the Vermont Land as exempt pursuant to Mass. Gen. Laws ch. 235, § 34(14) and ch. 188, § 4. The Court allowed the motion to amend on July 16, 2018. The Trustee timely objected to the claimed exemption in the Vermont Land. *See* Fed. R. Bankr. P. 4003(b)(1). In his Objection, the Trustee set forth the following reasons to disallow the claimed exemption in the Vermont Land:

> a. A Massachusetts homestead exemption can only be claimed in a "home,"
> as defined by the statute. Raw land, by itself, assessed as non-residential

5

property, does not qualify as a "home" under the statute. It also cannot qualify as a "primary residence" for the statute's purposes.
b. To claim a Massachusetts homestead in real estate the Debtor must, on the petition date, occupy or intend to occupy the property as a primary residence. The Debtor had no such intent.
c. A Massachusetts resident cannot claim a homestead under Massachusetts law on raw land located in Vermont.
d. The Debtor's failure to claim a homestead in a timely manner has caused the Trustee to incur additional costs in administering this case.[3]

The Debtor filed a Response to the Trustee's Objection, admitting that he continued to reside on Nantucket Island and lacked a permanent address. The Debtor also stated in his Response the following:

> The debtor has stated to counsel that some improvements have been made to the . . . [Vermont Land] . . ., although not sufficient for residing there, but given the events in Nantucket, he believes that he has no choice but to move there and build a home. Thus he would state that he intends to live there within a reasonable time since he apparently can no longer live in Nantucket.

The Debtor added:

> Having been evicted, however, it might reasonably be said that he is tilting at a windmill. Consequently, he has reluctantly made the decision that he will have to find a new home, probably sooner rather than later, and since he owns land in Vermont, that is probably his best alternative. He has the right to amend his exemption claim at any time for any reason, *see* Law v. Siegel, 134 S.Ct. 1188 (2014). He should not be punished for his belated recognition of "reality".

---

[3] According to the Chapter 7 Trustee, "the Massachusetts homestead statute clearly excludes raw land from the definition of a 'home,'" and "the Debtor waited almost a year into his case to claim raw land in Vermont as his homestead." while simultaneously litigating before a Massachusetts state court to recover the house on Nantucket as his "primary residence."

**III. THE MOTION FOR RECONSIDERATION**

The Debtor, in seeking reconsideration of the Court's ruling sustaining the Trustee's Objection, maintains the Court erred by applying principles of judicial estoppel and that he could find no Massachusetts cases where a property owner was denied a homestead exemption on judicial estoppel grounds. He maintains that "[h]e asserted his original homestead exemption in good faith, hoping that he would be able to recover title to his property through the chapter 11 process, and that has not been seriously challenged." He added that "[h]e has a good faith reason for changing his position – specifically, the court's allowance of the new owner's motion for relief from the automatic stay and the subsequent eviction from the property, leaving him and his family essentially homeless for a time."

**IV. DISCUSSION**

    A. Applicable Law

Rule 4003(c) of the Federal Rules of Bankruptcy Procedure provides that "[i]n any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed." According to the court in In re Roberts, "'If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper . . . the burden of persuasion, however, always remains with the objecting party.'" In re Roberts, 280 B.R. 540, 544–45 (Bankr. D. Mass. 2001) (citing Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 (9th Cir. 1999)); *see also* In re Vaghini, 549 B.R. 546, 548–49 (Bankr. D. Mass. 2016). The Court in its September 7, 2018 ruling determined that the

Trustee had sustained his Objection and that the Debtor's reliance upon the automatic homestead exemption set forth at Mass. Gen. Laws ch. 188, § 4 was unavailing,[4] a determination supported, but not dictated, by application of judicial estoppel.

With respect to the equitable doctrine of judicial estoppel, the First Circuit in RFF Family P'ship, LP v. Ross, 814 F.3d 520 (1st Cir. 2016), observed:

> Judicial estoppel is an equitable doctrine that "prevent[s] a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding." Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010); *see also* New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968

---

[4] Section 4 provides in pertinent part the following:

> In the absence of a valid declaration of homestead recorded under this chapter, an estate of homestead to the extent of the automatic homestead exemption shall exist in a home for the benefit of the owner and the owner's family members who occupy or intend to occupy the home as a principal residence. The homestead rights of non-titled family members shall consist of the right to use, occupy and enjoy the home as a principal residence.

Mass. Gen. Laws ch. 188, §4. The term "home" is precisely defined as any of the following:

> (i) a single-family dwelling, including accessory structures appurtenant thereto and the land on which it is located;
> (ii) a 2 to 4–family dwelling, including accessory structures appurtenant thereto and the land on which it is located;
> (iii) a manufactured home as defined in section 32Q of chapter 140;
> (iv) a unit in a condominium, as those terms are defined in section 1 of chapter 183A, that is used for residential purposes; or
> (v) a residential cooperative housing unit established pursuant to chapters 156B, 157B, 180 or otherwise; or the sale or insurance proceeds from any of these.

Mass. Gen. Laws, ch. 188, § 1.

(2001). The purpose of the doctrine is "to protect the integrity of the judicial process," New Hampshire, 532 U.S. at 749, 121 S.Ct. 1808 (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982)), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," id. at 750, 121 S.Ct. 1808 (quoting United States v. McCaskey, 9 F.3d 368, 378 (5th Cir.1993)). Courts typically invoke judicial estoppel "when a litigant tries to play fast and loose with the courts." Perry, 629 F.3d at 8.

Although "[t]he contours of judicial estoppel are hazy" and "its elements cannot be reduced to a scientifically precise formula," we have identified three conditions that must be satisfied to establish judicial estoppel. Id. at 8–9. "First, a party's earlier and later positions must be clearly inconsistent." Id. at 9; *see also* Alt. Sys. Concepts, Inc., 374 F.3d at 33 (for judicial estoppel, positions "must be directly inconsistent, that is, mutually exclusive"). "Second, the party must have succeeded in persuading a court to accept the earlier position." Perry, 629 F.3d at 9. To demonstrate acceptance of the prior position by a court, "a party need not show that the earlier representation led to a favorable ruling on the merits of the proceeding in which it was made, but must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition." Id. at 11. "Third, the party seeking to assert the inconsistent position must stand to derive an unfair advantage if the new position is accepted by the court." Id. at 9.

RFF Family P'ship, LP v. Ross, 814 F.3d at 527-28.

B. Analysis

The Court denies the Debtor's Motion for Reconsideration for several reasons. In the first place, exemptions are determined on the petition date and the Debtor submitted no evidence that he resided or intended to reside on the Vermont Land on the petition date. Indeed, he did not disclose his interest in the Vermont Land on his original Schedule A/B, and he admitted that his decision to claim the automatic homestead exemption under Mass. Gen. Laws ch. 188, § 4 was in response to his eviction from the Nantucket Home.

According to the court in In re Kuceris, 557 B.R. 6 (Bankr. D. Mass. 2016),

> When read together, § 522(b)(3)(A) and § 348(a) appear to mandate that a debtor's eligibility for exemptions under § 522(b)(3) is determined as of the petition date. Moreover, the case law is replete with conclusory statements that appear to be determinative of the issue at hand: "[I]t is a basic principle of bankruptcy law that exemptions are determined when a petition is filed." Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 324 (1st Cir. 2008) (quoting In re Friedman, 38 B.R. 275, 276 (Bankr. E.D. Pa. 1984) ("It is hornbook bankruptcy law that a debtor's exemptions are determined as of the time of the filing of his petition.")); Nealon v. Matthews (In re Nealon), 2016 WL 312409, at *7 (B.A.P. 1st Cir. 016) ("[A] debtor's entitlement to an exemption in a bankruptcy case is determined when the petition is filed."); In re Ellis, 446 B.R. 22, 24 (Bankr. D. Mass. 2011) ("Rights to exemptions are fixed as of the date of the petition."). Nevertheless, the case law has not been uniform when addressing the effect of chapter conversion on a debtor's entitlement to exemptions and how to deal with postpetition but pre-conversion changes in either the applicable state exemption law or the facts affecting a debtor's entitlement to exemptions.

In re Kuceris, 557 B.R. at 10. In Kuceris, the court recognized that "[t]he tension between the policy concern articulated by the Lindberg court [735 F.2d 1087 (8th Cir. 1984)] and the plain language of § 348(a) and § 522 gave rise to a split in the case law between courts applying a Lindberg-like policy approach and courts applying a plain meaning analysis of the Code provisions." 557 B.R. at 11. Nevertheless, the court held:

> In 1994, Congress amended the Bankruptcy Code in a manner that eliminated the equitable underpinnings of Lindberg and its progeny. As part of the Bankruptcy Reform Act of 1994, Congress enacted 11 U.S.C. § 348(f)(1)(A), which provides that property of the estate in a case converted from chapter 13 to chapter 7 is the property of the estate as of the date of the filing of the Chapter 13 petition. This amendment directly contradicts the Lindberg court's assertion that property of the estate in a case converted from chapter 13 to chapter 7 includes property that came into the estate after the chapter 13 petition date. It also eliminates the concern that debtors in such cases will not have the opportunity to claim exemptions in property that comes into the estate postpetition. When the Eight [sic] Circuit reviewed the Lindberg decision in the wake of this amendment, it found that "the equitable concerns underlying Lindberg are no longer relevant in

10

>light of the Bankruptcy Reform Act of 1994," and that the appropriate date for determining a debtor's eligibility for exemptions in a case converted from chapter 13 to chapter 7 is the petition date. In re Alexander, 236 F.3d 431, 432 (8th Cir. 2001).

In re Kuceris, 557 B.R. at 12 (footnote omitted).

As noted above, on the petition date, the Debtor did not even disclose an ownership interest in the Vermont Land, let alone manifest any intention to reside there, which would have required construction of a home.  Cf. In re Feliciano, 487 B.R. 47, 52-53 (Bankr. D. Mass. 2013) ("debtors' lack of any concrete plans to reestablish themselves in Puerto Rico, their absence for 17 years, the fact that the property is unfinished and deteriorated and that it is or has been for sale all evidence (i) a lack of any intent by the debtors to return and (ii) a lack of use by the debtors of the property. As a result the . . . property is not available to the debtors for exemption under Bankruptcy Code § 522(d)(1)."). Moreover, the instant case is distinguishable from In re Vaghini, 549 B.R. 546 (Bankr. D. Mass. 2016).  In that case, the debtor owned a house and an adjacent vacant lot.  Prior to the bankruptcy petition, the debtor filed a declared homestead with respect to both lots.  The lot with the house was foreclosed and between then and her petition date the debtor sought to secure a zoning variance in order to build a new principal residence on the vacant lot. Under those circumstances, the court overruled an objection to her claim of a homestead exemption reasoning that because the homestead was valid as to both lots when recorded, and was never terminated through one of the five enumerated ways under the statute, the homestead persisted in the vacant lot.

11

The Court also denies the Debtor's Motion for Reconsideration because it agreed with, and continues to agree with, the Trustee's contention that the "automatic homestead exemption" provides an exemption in the amount of $125,000, in a "home" and the intent must be to occupy the "home" as a "personal residence," which is defined as "the home where an owner, and the owner's family if applicable, resides or intends to reside as the primary dwelling; provided, however, that no person shall hold concurrent rights in more than 1 principal residence." Mass. Gen. Laws, ch. 188, § 1.

The Debtor did not manifest any intention to reside in a "home" in Vermont at the commencement of the case and the Vermont Land is vacant land - -there is no home there and it is assessed by the Town of Andover, Vermont as "non residential." Thus, the Court's ruling was predicated on the Debtor's failure to satisfy the requisites for a valid homestead under both state and bankruptcy law. The Debtor's sole reliance on application of judicial estoppel underscores the absence of any cogent arguments pertaining to the timing of his claimed homestead exemption in the Vermont Land, the absence of a "home" there, and any evidence in the form of an affidavit or otherwise that he had intended to occupy the Vermont Land at the commencement of the case.

Application of judicial estoppel unquestionably supports sustaining the Trustee's Objection, and the Debtor's argument that judicial estoppel was improperly applied cannot lead to allowance of the Motion for Reconsideration where other compelling grounds for disallowance of the motion exist as set forth above. The three conditions referenced by the United States Court of Appeals for the First Circuit in <u>RFF Family P'ship, LP v. Ross</u> are present in the instant case. The Debtor's position as to his claimed

homesteads in the Nantucket Home and the Vermont Land are "clearly inconsistent" and "mutually exclusive." 814 F.3d at 528. The Debtor utilized his earlier representation that the Nantucket Home was his validly claimed homestead throughout his case and in the adversary proceeding to obtain relief from this Court in the form of denial of Millbrook's motions for relief from the automatic stay and the entry of a preliminary injunction. Finally, permitting the Debtor to claim a homestead exemption in the Vermont Land would have undermined the Trustee's Motion to Sell the Vermont Land which has a value of $93,600.00, thus conferring an unfair advantage on the Debtor. Id. at 528. In short, sustaining the Debtor's claimed exemption would sacrifice the integrity of the judicial process by permitting the Debtor to change his position based upon "the exigencies of the moment." Id. at 527.

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order denying the Motion for Reconsideration.

By the Court,

*[signature: Joan N. Feeney]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: October 16, 2018